# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| CHARLES GUDBRANDSEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18 C 50411 |
| | ) |
| ROGER A. SCOTT, Sheriff of DeKalb County, and CITY OF SYCAMORE POLICE DEPARTMENT, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| OFFICE OF THE ILLINOIS ATTORNEY GENERAL, | ) |
| | ) |
| Intervenor-Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Pro se plaintiff Charles Gudbrandsen has sued the City of Sycamore Police Department and Roger A. Scott, the Sheriff of DeKalb County. He alleges that Illinois' recently-enacted Firearms Restraining Order Act, 430 Ill. Comp. Stat. 67, violates the Second Amendment to the United States Constitution. Scott has moved to dismiss the complaint, arguing that Gudbrandsen lacks standing to pursue his claim because he has not suffered an injury. The state of Illinois, which has intervened in the case to defend the constitutionality of the statute, has also filed a motion to dismiss for lack of standing. For the reasons explained below, the Court grants the motions.

## Background

The Firearms Restraining Order Act became effective on January 1, 2019. In relevant part, the Act establishes a procedure by which an individual can file a petition for an emergency restraining order against someone that "poses an immediate and present danger of causing personal injury to himself, herself, or another by having in his or her custody or control, purchasing, possessing, or receiving a firearm." 430 Ill. Comp. Stat. 67/35(a). The only individuals who may petition for a restraining order under the Act are law enforcement officials or family members of the person against whom the order is sought. *See id.* § 67/5 (defining "petitioner"). If the court grants the petition, it must issue a restraining order requiring the respondent to refrain from possessing or obtaining firearms and to turn over his or her Firearm Owner's Identification Card and/or concealed carry license to law enforcement. *Id.* § 67/35(g). Another provision of the Act, 420 Ill. Comp. Stat. 67/60, requires Illinois courts to recognize similar firearms restraining orders issued in other jurisdictions that are filed with the clerk of the court.

Gudbrandsen alleges that sections 67/35 and 67/60 of the Act violate the Second Amendment. He does not allege, however, that the Act has been enforced against him or anyone else. Rather, he contends that the ex parte procedure established in section 67/35 and the recognition of out-of-state firearms restraining orders subject him to possible "State action, enforced by the Defendants, which will invariably imbue the Plaintiff as being psychologically unstable, violent, and/or engaged in criminal conduct[] based solely on an allegation from a petitioner, or any other arbitrary standard enacted by another state, tribe, or United States Territory." Amended Compl., dkt. no. 19, ¶ 11.

Gudbrandsen alleges that the onset of ex parte proceedings under section 67/35 could result in the loss of his security clearance and thus his job as an officer in the United States Army.

In his original complaint, Gudbrandsen named the state of Illinois as the sole defendant. The state moved to dismiss the complaint, arguing that sovereign immunity barred the suit and that Gudbrandsen lacked standing because he had not suffered an injury. In his brief in response to the motion, Gudbrandsen addressed only the question of standing; rather than discussing the issue of sovereign immunity, he filed an amended complaint that substituted as defendants the City of Sycamore Police Department and the Sheriff of DeKalb County.

The Sheriff has moved to dismiss the amended complaint for lack of standing. The Office of the Illinois Attorney General, no longer a named defendant, moved to intervene in the suit to defend the constitutionality of the statute, and its prior motion to dismiss for lack of standing remains pending.

## Discussion

The doctrine of standing "is rooted in Article III" of the U.S. Constitution, "which limits a federal court's power to the resolution of 'Cases' or 'Controversies.'" *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019). A federal court may therefore exercise jurisdiction over a dispute only if the plaintiff has "allege[d] an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision." *Id.*

In this case, the question of whether Gudbrandsen has standing turns on the "injury in fact" requirement—specifically, whether he may challenge the constitutionality

3

of the Firearms Restraining Order Act even though it has not been enforced against him. In *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), the Supreme Court explained that in appropriate circumstances an individual need not have experienced "an actual arrest, prosecution, or other enforcement action" to challenge a law. *Id.* at 158. "Instead, we have permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent." *Id.* at 159. To satisfy this requirement, the plaintiff must allege that he has "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.*

The allegations in Gudbrandsen's amended complaint do not satisfy this requirement. First, he has not alleged that he intends to engage in conduct that that is "arguably proscribed by" the Firearms Restraining Order Act. By the express terms of the Act, he would be subject to a restraining order only if a law enforcement officer or a member of his family filed "an affidavit or verified pleading" alleging that he "poses an immediate and present danger of causing personal injury to himself . . . or another." 430 Ill. Comp. Stat. 67/35(a). But Gudbrandsen has not alleged that he intends to pose such a danger or that he plans to engage in conduct that would lead another person to believe him dangerous. Rather, he appears to contend that he will be falsely or mistakenly accused but does not allege any facts suggesting that this fear has any basis in reality. Indeed, the Act guards against malicious or intentionally false accusations by providing that a "person who files a petition for an emergency firearms restraining order, knowing the information provided to the court at any hearing or in the affidavit or verified pleading to be false, is guilty of perjury," *id.* § 67/35(c), and thus

4

subjects him- or herself to criminal prosecution.

The Supreme Court's decision in *Babbitt v. United Farm Workers National Union*, 442 U.S. 289 (1979), provides a useful comparison. In that case, the Court held that the plaintiffs had standing to challenge a statute that made it unlawful to use "dishonest, untruthful and deceptive publicity" in advocating agricultural boycotts even though the plaintiffs "did not plan to propagate untruths." *Id.* at 301. The Court, citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), reasoned that "erroneous statement is inevitable in free debate" and that the plaintiffs had therefore sufficiently alleged their intent to engage in proscribed activities because they planned to continue their boycott advocacy. *Babbitt*, 442 U.S. at 301. In this case, by contrast, Gudbrandsen has not alleged anything that would suggest that he is likely to be accused of dangerousness in an ex parte proceeding under the Act as a result of any particular future conduct. Whereas false statements naturally occur during "free debate"—particularly during boycott campaigns—the average individual does not as a matter of course "pose[] an immediate and present danger of causing personal injury." 430 Ill. Comp. Stat. 67/35(a). Gudbrandsen thus has not alleged an intention to engaged in proscribed activities as required by *Babbitt* and *Susan B. Anthony List*.

Similarly, Gudbrandsen has not alleged facts that support a reasonable inference that he faces a "substantial" or "credible" threat of future enforcement. *See Susan B. Anthony List*, 573 U.S. at 161, 164. Unlike the plaintiffs in *Susan B. Anthony List*, Gudbrandsen has not identified any instances in which ex parte proceedings under section 67/35 have been instituted against him or anyone else based on conduct in which he plans to engage. *See id.* at 164 ("[P]ast enforcement against the same

5

conduct is good evidence that the threat of enforcement is not chimerical" (internal quotation marks omitted)). In *Susan B. Anthony List*, for example, the plaintiffs credibly alleged a risk of future enforcement because the state had "already found probable cause to believe that [the petitioners] violated the statute" by making "the same sort of statement petitioners plan to disseminate in the future." *Id.* at 162. In this case, Gudbrandsen has not alleged any history of enforcement of the Act that might "demonstrate a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement" beyond a purely "imaginary or speculative" risk that he will be falsely accused. *Babbitt*, 442 U.S. at 298.

The Firearms Restraining Order Act also poses a less serious risk of enforcement than the statute at issue in *Susan B. Anthony List* because it allows only a small category of individuals—law enforcement officers and Gudbrandsen's family members—to institute proceedings against him. *See* 430 Ill. Comp. Stat. 67/5; *see also Susan B. Anthony List*, 573 U.S. at 164 ("The credibility of [the] threat [of enforcement] is bolstered by the fact that . . . 'any person' with knowledge of the purported violation [may] file a complaint."). And unlike the plaintiffs in *Susan B. Anthony List*—which were organizations that criticized candidates for political office and thus were "easy targets" for complaints, *see id.*—Gudbrandsen has not alleged that he is particularly susceptible to false accusations of dangerousness, particularly in light of the fact that a knowingly false accusation would be a crime. Because the allegations in the amended complaint do not reasonably suggest that "there exists a credible threat" that the Act will be enforced against him, *id.* at 159, Gudbrandsen does not have standing to raise his pre-enforcement challenge.

6

Finally, Gudbrandsen also appears to allege that he has already suffered an injury—namely that "[i]n order to attempt to prevent enforcement of this Act, the Plaintiff must avoid any conduct that could, misconstrued or otherwise, label the Plaintiff as a 'danger to himself or others.'" Pl.'s Resp. to Illinois' Mot. to Dismiss, dkt. no. 18, at 2–3. Construing his pro se submission liberally as the Court must, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), it is reasonable to interpret this argument as an allegation that Gudbrandsen has been injured by the need to refrain from certain conduct in order to avoid running afoul of the Act. But even if it is so construed, this allegation does not provide a basis on which to deny the motions to dismiss. Gudbrandsen has not identified any specific conduct from which he has had to refrain. He has thus failed to allege a plausible connection between the Act and his supposed injury as required to withstand the motions to dismiss.[1] *See Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (noting that a plaintiff states a plausible claim for relief if he includes "enough details about the subject matter of the case to present a story that holds together"); *see also Bell*, 697 F.3d at 454 ("[A] plaintiff's notional or subjective fear of chilling is

---

[1] Even if Gudbrandsen had identified specific conduct or behavior in which he feels he can no longer engage because of the risk of ex parte proceedings Act, it is unclear whether a "chilling effect" on the exercise of Second Amendment rights can constitute an injury with respect to constitutional claims other than those under the First Amendment. *See, e.g.*, *Moustakas v. Margolis*, 154 F. Supp. 3d 719, 732 (N.D. Ill. 2016); *Bolton v. Bryant*, 71 F. Supp. 3d 802, 817 (N.D. Ill. 2014) (Chang, J.) ("The prior restraint doctrine embraces concepts unique to the First Amendment; the primary focus of the doctrine is preventing censorship and limiting the chilling effect of prior restraints on protected speech."); *but see Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 946 n.7 (N.D. Ill. 2014) (Chang, J.) ("Plaintiffs here have sufficiently demonstrated that their Second Amendment right to acquire firearms via legitimate transfers have [*sic*] been chilled . . . ."). The Court need not resolve this issue, however, because Gudbrandsen has at most alleged a "notional or subjective fear of chilling." *Bell v. Keating*, 697 F.3d 445, 454 (7th Cir. 2012).

insufficient to sustain a court's jurisdiction under Article III . . . ." (citing *Laird v. Tatum*, 408 U.S. 1, 11, 13–14 (1972))).

## Conclusion

For the foregoing reasons, the Court grants the motions to dismiss by defendant Scott [dkt. no. 24] and intervenor Office of the Illinois Attorney General [dkt. no. 9] and directs the Clerk to enter judgment dismissing the case for lack of standing.

_____<br>
MATTHEW F. KENNELLY<br>
United States District Judge

Date: September 6, 2019